**CT Corporation**

TO: Christine Gillen
The Prudential Insurance Company of America
Legal Department, 751 Broad St, 4th Floor
Newark, NJ 07102

RE: **Process Served in Tennessee**

FOR: The Prudential Insurance Company of America (Domestic State: NJ)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Richard A. Johnson and C. Dale Allen, Trustees, Pltffs. vs. Prudential Insurance Company of America, Inc., Dft. Name discrepancy noted. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint, Attachments |
| **COURT/AGENCY:** | Davidson County Chancery Court, TN Case # 111106IV |
| **NATURE OF ACTION:** | Breach of Contract - Defendant's failure to convert insurance policy into preferred policy |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 08/29/2011 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED :** | Tennessee |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days |
| **ATTORNEY(S) / SENDER(S):** | Winston S. Evans Evans, Jones & Reynolds, P.C. 710 Suntrust Plaza 401 Commerce St. Nashville, TN 37219-2405 615-259-4685 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/29/2011, Expected Purge Date: 09/03/2011 Image SOP Email Notification, Legal Process Unit legal.process.unit@prudential.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Amy McLaren |
| **ADDRESS:** | 800 S. Gay Street Suite 2021 Knoxville, TN 37929-9710 |
| **TELEPHONE:** | 800-592-9023 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.


**EXHIBIT A**

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
500 James Robertson Parkway
**Nashville, TN 37243-1131**
PH - 615.532.5260, FX - 615.532.2788
brenda.meade@tn.gov

August 24, 2011

Prudential Insurance Co. Of America
800 S. Gay Street, Ste 2021, % C T Corp.
Knoxville, TN 37929-9710
NAIC # 68241

Certified Mail
Return Receipt Requested
7011 0470 0000 5066 4153
Cashier # 4795

Re:   Richard Johnson & C. Dale Allen   V.   Prudential Insurance Co. Of America

Docket # 11-1106-I V

To Whom It May Concern:

Pursuant to Tennessee Code Annotated §56-2-504 or §56-2-506, the Department of
Commerce and Insurance was served August 16, 2011, on your behalf in connection with the
above-styled proceeding. Documentation relating to the subject is herein enclosed.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
    Davidson County
    One Public Square, Suite 308
    Nashville, Tn 37201

FILED
06 NOV 1 PM 3:31
CLERK AND MASTER
DAVIDSON CO. CHANCERY CT.
DC&M

IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

| | |
|---|---|
| RICHARD A. JOHNSON, and<br>C. DALE ALLEN, TRUSTEES, | )<br>) |
| Plaintiff, | )<br>) |
| v. | )  Case No. ___11/106 TV___ |
| PRUDENTIAL INSURANCE COMPANY<br>OF AMERICA, INC., | )<br>)<br>) |
| Defendant. | )<br>) |

*Forest.Latta@Burr.com*

## COMPLAINT

1.  Plaintiff, Richard A. Johnson, Trustee ["Mr. Johnson"] is a citizen and resident of Davidson County, Tennessee.

2.  Plaintiff, C. Dale Allen ["Mr. Allen"], is a citizen and resident of Davidson County, Tennessee.

3.  Defendant, the Prudential Insurance Company of America, Inc. ["Prudential"], is a corporation organized and existing under the laws of New Jersey.

4.  Prudential conducts substantial business on a continuing basis in Davidson County, Tennessee. It also maintains offices in Davidson County, Tennessee.

5.  The events giving rise to this lawsuit occurred in Davidson County, Tennessee.

6.  Venue is proper in this Court.

7.  Mr. Johnson and Mr. Allen ["the Trustees"] bring this suit in their capacity as co-trustees under an irrevocable Trust Agreement dated October 17, 1996 for the Gary D. Sasser Irrevocable Trust ["The Trust"].

8. The Trustees bring this suit for the benefit of the Trust.

9. On September 14, 2000, Prudential issued a life insurance policy on the life of Gary D. Sasser [Policy #B4 048 620]["the Policy"].

10. A true and correct copy of the Policy is attached as Exhibit 1.

11. The insured under the Policy was, Mr. Gary D. Sasser ["Mr. Sasser"]

12. The Policy was a term life insurance policy.

13. The term of the Policy was 20 years.

14. The face amount of the Policy was $30,000,000.

15. Mr. Johnson, as Trustee under the irrevocable Trust Agreement dated October 17, 1996, or the successor in Trust was the owner and beneficiary of the Policy.

16. The Policy constituted a contract between Prudential, on the one hand, and the Trustees and the Trust, on the other hand.

17. When the Policy was issued, the following rating classifications were available from Prudential:

- Select Preferred
- Preferred
- Standard

18. The Select Preferred and Preferred rating classifications were available only to nonsmokers.

19. Mr. Sasser was and still is a nonsmoker.

20. Mr. Sasser received the Preferred rating classification from Prudential.

2

21.     At pages 10-11, the Policy provided for conversion to another plan of insurance. In pertinent part, the Policy provided as follows:

> Contract
> Specifications        The new contract will be *in the same rating class* as this contract. We will set the issue age and the premiums for the new contract in accordance with our regular rules in use on its contract date.

(Underlining and italics supplied).

22.     Thus, Prudential was obligated, upon request from the Trustee, to convert the Policy to a policy *in the same rating class*.

23.     Because the Mr. Sasser had received the *Preferred* rating classification, Prudential was required to convert the policy to one in the same *Preferred* rating class.

24.     As owner and beneficiary of the Policy and in accordance with the provisions of the Policy, The Trustees attempted to convert the Policy to a UL Protector Policy having the same *Preferred* rating class.

25.     On November 22, 2005, Prudential sent a letter to Mr. Johnson, [Exhibit 2] In pertinent part, the letter stated as follows:

> The purpose of this note is to summarize the process Prudential uses to determine the rating class when a term policy is converted to a new contract under the conversion privilege in the term contract. The rating classification of the new plan will be the same rating classification as the term coverage being converted *if the same rating classification is available*. If the new policy requested does not offer the same rating classification, the new policy will be in the rating class that is *equivalent* to that of the existing term policy.
>
> In 2000, when Term Plus Policy B4048620 was issued, the rating classifications available were Select Preferred, Preferred and Standard, where Select Preferred as the best available classification offered. In the case of Mr. Sasser's policy, he received our Preferred

3

> Classification, which was our rating classification for nonsmokers who did not qualify for the Select Preferred Classification. For contractual conversions from a Term Plus contract, the rating classifications today which are equivalent to Select Preferred, Preferred and Standard are Preferred Nonsmoker, Nonsmoker and Smoker, respectively. Our current rating classification for nonsmokers who did not qualify for a Select Preferred rating is Nonsmoker. To be considered for the better rating classification than Nonsmoker (which is the contractually guaranteed rating classification), Mr. Sasser would need to go through appropriate underwriting. . . .

(Underlining and italics supplied).

26.     Contrary to Prudential's letter, the Policy did not permit Prudential to issue a converted policy based on an *equivalent* rating class. Rather, the Policy required Prudential to base the converted policy on the *same* rating class. The *same* rating class was Preferred, not the purportedly equivalent rating class of "nonsmoker."

27.     On November 29, 2005, the Trustees sent a letter to Prudential demanding Prudential convert the Policy to a new policy with a "Preferred Non-Smoker" rating. [Exhibit 3]  In pertinent part, the letter stated as follows:

> . . . I hereby elect to convert this policy to a PruLife UL Protector Life Insurance Policy, insured by Gary Sasser, insurance amount $30,000,000, Type A (Fixed) Death Benefit. Pursuant to the terms of the Term Policy Prudential Financial is required to convert this policy to a new contract "in the same rating class" as the Term Policy. The Term Policy's rating class is "Preferred." Accordingly, we demand a conversion to the current underwriting classification of "Preferred Non-Smoker." By the express terms of the Term Policy, this is the "same rating class." The Term Policy does not authorize conversion to "an equivalent rating class" as permitted by some of your company's contractual policy language contained in later issued policies.

At the conclusion of the letter, the Trustees tendered a check in the amount of $385,282.00 for the first annual premium on the converted policy.

4

28. On December 6, 2005, Prudential sent a letter to the Trustees [Exhibit 4]. In that letter, Prudential refused to convert the policy to a new policy with a "Preferred Non-Smoker" rating. In pertinent part, the letter stated as follows:

> Since we are unable to issue a PruLife UL Protector policy with rating classification Preferred Nonsmoker without underwriting, we are returning your check and paperwork. The conversion annual premium for a UL Protector with a rating classification of Nonsmoker that corresponds to the $385,282.00 annual premium for the Preferred Nonsmoker and utilizes your term conversion premium credit of $100,872.00 is $461,020.00. If we receive the application with the annual premium payment of $461,020.00 or the Minimum Initial Premium of $53,005.28 by December 20, 2005, we will allow the conversion to a PruLife UL Protector with rating class Nonsmoker, otherwise you will no longer have the ability to convert your term policy.

29. On February 16, 2006, the Trustees sent a letter to Prudential [Exhibit 5]. In pertinent part, the letter stated as follows:

> In accordance with your letter dated November 6, 2005, and our letter dated December 19, 2005, the Trust elects to convert the Term Policy and we are enclosing the Application for Life Insurance or Policy Change to convert the Term Policy. By converting this policy under the terms of your letter dated November 6, 2005, and received by us in early December 2005, we, as Trustees of the Gary D. Sasser Irrevocable Trust, expressly reserve all legal rights available to it as set forth in our letter dated November 29, 2005.

30. Thus, the Trustees converted the Policy to a PruLife UL Protector policy with rating classification of nonsmoker ["the Converted Policy"] in accordance with Prudential's letter of December 6, 2005. However, they expressly reserved their right to have the Policy converted to a PruLife UL Protector with the same rating class as the Policy.

31. Prudential has failed and refused to honor its contractual obligation to convert the Policy to a new policy having the *same* rating class.

5

32. The premiums which the Trustees must pay for the Converted Policy ( PruLife UL Protector policy with rating classification of nonsmoker ) are much greater than the premiums which they would be required to pay for a policy with the same rating classification as the Policy (Preferred).

33. At the very least, Prudential was obligated to convert the policy to a PruLife UL Protector with a Preferred Nonsmoker rating classification.

34. The premiums which the Trustees must pay for the Converted Policy ( PruLife UL Protector policy with rating classification of nonsmoker ) are much greater than the premiums which they would be required to pay for a policy with the Preferred Nonsmoker rating classification.

35. Having agreed to issue a converted policy with the same rating class as the Policy, Prudential was obligated to maintain that same rating class. That rating class was "Preferred."

36. When Prudential eliminated the "Preferred" rating class instead of maintaining it, it breached its contract with the Trustees and the Trust.

37. By eliminating the "Preferred" rating class, Prudential rendered itself unable to perform its contract with the Trustees and the Trust.

38. As stated in this complaint, Prudential has breached the contract which it had with the Trustees and the Trust.

39. Prudential's breach of contract has caused great damage to the Trustees and the Trust.

40. Prudential owed to the Trustees and to the Trust a duty of good faith and fair dealing.

41. As stated in this Complaint, Prudential has breached the obligation of good faith and fair dealing which it owed to the Trustees and to the Trust.

42. Prudential's breach of its obligation of good faith and fair dealing has proximately caused great damage to the Trustees and to the Trust.

6

43.     The Trustees have paid all premiums for the Converted Policy as those premiums have become due. They will continue to do so.

PREMISES CONSIDERED, the Trustees Demand:

1.      That they have judgment for the benefit of the Trust against Prudential for compensatory damages and prejudgment interest pursuant to T.C.A. §47-14-123.

2.      That the Court reform the Contract between the parties so that the premiums which must be paid for the Converted Policy are reduced to the amount which the Trustees would be required to pay if the rating classification for the Converted Policy had been Preferred, rather than Nonsmoker.

3.      In the alternative, that the Court reform the Contract between the parties so that the premiums which must be paid for the Converted Policy are reduced to the amount which the Trustees would be required to pay if the rating classification for the Converted Policy had been Preferred Non-Smoker, rather than Nonsmoker.

4.      That all costs, including discretionary costs, be taxed to Prudential.

5.      That they have such other and further relief as this Court deems just and proper.


Winston S. Evans (#6281)
Evans, Jones & Reynolds, P.C.
710 Suntrust Plaza
401 Commerce St.
Nashville, TN 37219-2405
(615) 259-4685
*Attorney for Plaintiffs, Richard A. Johnson
and C. Dale Allen, Trustees*

366800.001

7

1


**Prudential**

Insured  GARY D SASSER

Agency  W-NSOX

The Prudential Insur...    Com...y   America
a mutual life insurance company
751 Broad Street, Newark, NJ 07102-3777

FILED
2011 AUG 11
SEP 04 30 2000
CLERK AND MASTER
DAVIDSON CO. CHANCERY CT.
DC&M

B4 048 620    Policy Number
000    Contract Date

---

**Term Life Policy. Provides a level benefit. Life insurance payable upon death within stated term period.  Premiums payable during Insured's lifetime for stated premium period. After a period of level premiums, the premiums will increase annually as shown under Premium Period on page 3. Convertible, as limited, but not renewable. Eligible for annual dividends as stated under Dividends.**

We will pay the beneficiary the death benefit described in this contract promptly if we receive due proof that the Insured died in the term period. We make this promise subject to all the provisions of this contract. The term period starts on the contract date.  The anniversary at the end of the term period is part of the term period.

If there is ever a question about this contract, just see a Prudential representative or contact one of our offices.

**10-Day Right to Cancel Contract** — If you return this contract to us no later than 10 days after you receive it, we will refund your money promptly. The contract will be canceled from the start. All you have to do is take it or mail it to one of our offices or to the representative who sold it to you.

Signed for Prudential.

Secretary                                        President

PLEASE READ YOUR POLICY CAREFULLY; it is a legal contract between you and Prudential.

# GUIDE TO CONTENTS

| | Page |
|---|---|
| **Contract Data** | 3 |
| Basic Contract Information About Insurance Coverage and Premiums Payable Under the Contract | |
| **Definitions** | 5 |
| **The Contract** | 5 |
| Entire Contract; Contract Modifications; Incontestability | |
| **Ownership** | 5 |
| **Death Benefits** | 6 |
| Unearned Premium; Interest on Death Benefit; Suicide Exclusion; Method of Payment | |
| **Beneficiary** | 6 |
| **Conversion to Another Plan of Insurance** | 7 |
| Right to Convert; Conditions; Premium Credit; Contract Date; Contract Specifications | |
| **Change in Plan** | 8 |
| **Dividends** | 9 |
| Dividend Options; Dividend Credits Described; Automatic Cash Payment | |
| **Premium Payment** | 9 |
| Payment of Premiums; Change of Frequency; Grace Period | |
| **Reinstatement** | 10 |
| **General Provisions** | 10 |
| Currency; Misstatement of Age or Sex; Assignment; Voting Rights | |
| **Settlement Options** | 11 |
| Options Described; Interest Rate | |
| **Settlement Options Tables** | 12 |

**A copy of the application and any riders or endorsements can be found at the end of the contract.**

(T—95)

# CONTRACT DATA

## Insured

GARY D SASSER      Male,      Issue Age 49

---

## Rating Class

Preferred

---

## Basic Contract Information

Policy Number      B4 048 620
Contract Date      September 14, 2000
Term Period      20 years
Premium Period      20 years    (premiums for Basic Amount are level for 10 years, then increase annually for 10 years)

Beneficiary      See Beneficiary Provision attached.

---

## Life Insurance on the Insured

Basic Amount                      $30,000,000.00

---

## Schedule of Premiums

Contract premiums are due on the contract date and every 12 months after that date. The annual premium is $95,450.00 and changes as shown below.

| Premium Change Date(s) | Total Annual Contract Premiums |
|---|---|
| SEP 14, 2010 | $365,150.00 |
| SEP 14, 2011 | $406,850.00 |
| SEP 14, 2012 | $453,350.00 |
| SEP 14, 2013 | $507,650.00 |
| SEP 14, 2014 | $569,450.00 |
| SEP 14, 2015 | $638,750.00 |
| SEP 14, 2016 | $715,850.00 |

CONTRACT DATA CONTINUED ON NEXT PAGE

**Prudential**

# CONTRACT DATA CONTINUED

| Premium Change Date(s) | Total Annual Contract Premiums |
|---|---|
| SEP 14, 2017 | $799,850.00 |
| SEP 14, 2018 | $891,050.00 |
| SEP 14, 2019 | $991,550.00 |

## END OF CONTRACT DATA

**Prudential**

## ENDORSEMENTS

(Only we can endorse this contract.)

## DEFINITIONS

**We, our** and **us.**—Prudential.

**You** and **Your.**—The owner of the contract.

**Insured.**—The person named as the Insured on the first page. He or she need not be the owner.

**Issue date.**—Same as the contract date.

**Anniversary** or **contract anniversary.**—The same day and month as the contract date in each later year.

**Contract year.**—A year that starts on the contract date or on an anniversary.

**Attained age.**—The Insured's issue age plus the length of time since the contract date. You will find the Insured's issue age near the top of page 3.

## THE CONTRACT

**Entire Contract**  This policy and any attached copy of an application, including an application requesting a change, form the entire contract. We assume that all statements in an application are made to the best of the knowledge and belief of the person(s) who make them; in the absence of fraud, they are deemed to be representations and not warranties. We rely on those statements when we issue the contract and when we change it. We will not use any statement, unless made in an application, to try to void the contract, to contest a change, or to deny a claim.

**Contract Modifications**  Only a Prudential officer with the rank or title of vice president may agree to modify this contract, and then only in writing.

**Incontestability**  Except for non-payment of premium, we will not contest this contract after it has been in force during the Insured's lifetime for two years from the issue date.

## OWNERSHIP

On the contract date, the Insured is the owner of the contract, unless a different owner is named in the application. If a different owner is named, we will show that owner in a provision we endorse in the contract. The ownership arrangement in effect on the contract date will remain in effect unless you ask us to change it.

If you wish to change the ownership of the contract, your request must be in a form that meets our needs. The change will take effect only when we file the request; this will be after you send us the contract, if we require it to issue an endorsement. Then any previous owner's interest will end as of the date of the request, even if the Insured is not living when we file the request.

While the Insured is living, the owner alone is entitled to any contract benefit and value, and to the exercise of any right and privilege granted by the contract or by us.

# DEATH BENEFITS

If the Insured dies in the term period, we will pay a benefit at the Insured's death (except as we state in the Suicide Exclusion) if this contract is in force at the time of death; that is, the initial premium has been paid and no premium is past due beyond the 31 day grace period we describe under Premium Payment.

The benefit payable at the Insured's death will be equal to the Life Insurance on the Insured as described on a contract data page, plus any dividend credits, plus a return of any unearned premium less any past due premium.

This contract may provide other benefits on the death of the Insured or benefits on the death of other insureds. If it does, each benefit will be listed on a contract data page, and a form describing the benefit and the conditions under which it is payable will be included in this contract. Any such benefit will be payable only if the contract is in force, unless the form that describes the benefit states otherwise.

| | |
|---|---|
| **Unearned Premium** | When we pay a death benefit on any insured, we will return that part of the last premium paid for that benefit that covers the period after the date of death. |
| **Interest on Death Benefit** | Any death benefit described above will be credited with interest from the date of death according to the laws of the jurisdiction where this contract is delivered. |
| **Suicide Exclusion** | If the Insured, whether sane or insane, dies by suicide within two years from the issue date, this contract will end and we will return the premiums paid. The contract will provide no further benefit. |
| **Method of Payment** | You may choose to have any death benefit paid in a single sum or under an optional mode of settlement (see Settlement Options). |

# BENEFICIARY

You may designate or change a beneficiary. Your request for a change must be in a form that meets our needs. The change will take effect only when we file the request; this will be after you send us the contract to be endorsed, if we require it. Then any previous beneficiary's interest will end as of the date of the request, even if the Insured is not living when we file the request. Any beneficiary's interest is subject to the rights of any assignee we know of.

When a beneficiary is designated, any relationship shown is to the Insured, unless otherwise stated. To show priority, we will use numbered classes, so that the class with first priority is called class 1, the class with next priority is called class 2, and so on. When we use numbered classes, these statements apply to beneficiaries unless the form states otherwise:

1. One who survives the Insured will have the right to be paid only if no one in a prior class survives the Insured.

2. One who has the right to be paid will be the only one paid if no one else in the same class survives the Insured.

3. Two or more in the same class who have the right to be paid will be paid in equal shares.

4. If none survives the Insured, we will pay in one sum to the Insured's estate.

Before we make a payment, we have the right to decide what proof we need of the identity, age or any other facts about any persons designated as beneficiaries. If beneficiaries are not designated by name and we make payment(s) based on that proof, we will not have to make the payment(s) again.

# CONVERSION TO ANOTHER PLAN OF INSURANCE

**Right to Convert**  You may convert this contract to a new contract of life insurance on the Insured's life. You will not have to prove that the Insured is insurable.

**Conditions**  You must ask for the conversion in a form that meets our needs, while this contract is in force, and on or before the fifth contract anniversary. We may require you to send us the contract.

The new contract will not take effect unless the premium for it is paid while the Insured is living and within 31 days after its contract date. If the premium is paid as we state, it will be deemed that the new contract took effect on its contract date and that this contract ended just before that date. We will return that part, if any, of the last premium paid for this contract that is more than was needed to pay premiums to the contract date of the new contract.

**Premium Credit**  Upon conversion, we will allow a credit on each premium that is due or scheduled for payment during the first year of the new contract.

If this contract has been in force for at least one year on the contract date of the new contract, we will allow the full credit described below. If this contract has been in force for less than one year as of that date, the credit will be reduced to consider the portion of a year for which this contract has then been in force.

The full credit is equal to the premiums for the term insurance being converted that were due, on the premium mode in effect at the time of conversion, during the twelve months preceding the date of the new contract. Extra premiums or charges for extra risks or extra benefits other than a benefit for waiving premiums are not considered in determining this credit.

We will reduce each premium due or scheduled for payment in the first year of the new contract to consider either the full or reduced credit, as appropriate.

**Contract Date**  You may choose any contract date for the new contract, that is not after the date to which premiums are paid for this contract, not after the fifth contract anniversary, and not more than 31 days prior to the date we receive your request.

**Contract Specifications**  The new contract will be in the same rating class as this contract. We will set the issue age and the premiums for the new contract in accordance with our regular rules in use on its contract date.

Except as we state in the next sentence, the new contract may be on any life or endowment plan we regularly issue on its contract date for the same rating class, amount, issue age, and sex. It may not be: a single-premium contract; one that insures anyone in addition to the Insured; one that includes or provides for term insurance, other than extended insurance; one with premiums that increase after a stated time, if its first premium is less than 80% of any later premium; or one with any benefit other than the basic insurance benefit and the waiver and accidental death benefits we refer to below.

The basic amount of the new contract may be any amount you ask for as long as it is at least $10,000 and not more than the basic amount of this contract. If the amount you want is smaller than the smallest amount we would regularly issue on the plan you want, we will issue a new contract for as low as $10,000 on the Life Paid Up at Age 85 plan if you ask us to.

If this con.    . has a benefit for waiving premiums in the   .ent of disability, we will include a benefit for waiving premiums in the new contract if its premium period runs to at least the Insured's attained age 85 and if we would include a waiver benefit in other contracts like the new one.

We will not deny a benefit for waiving premiums that we would have allowed under this contract, and that we would otherwise allow under the new contract, just because disability started before the contract date of the new contract. But any premium to be waived for disability under the new contract must be at the frequency that was in effect for this contract when the disability started. We will not waive any premium under the new contract unless it has a benefit for waiving premiums in the event of disability, even if we have waived premiums under this contract.

If this contract has an accidental death benefit, we will include an accidental death benefit in the new contract if we would regularly issue contracts like the new contract with that benefit. But you must ask for the benefit in your request for conversion, and the basic amount of the new contract must be no larger than the basic amount of this contract. The amount of the accidental death benefit in the new contract will be the smaller of the basic amount of the new contract and the amount of the accidental death benefit in this contract.

Any benefit for waiving premiums and any accidental death benefit in the new contract will be the same one, with the same provisions, that we put in other contracts like it on its contract date. In any of these paragraphs, when we refer to other contracts, we mean contracts we would regularly issue on the same plan as the new contract and for the same rating class, amount, issue age and sex.

## CHANGE IN PLAN

You may be able to have this contract changed to another plan of life insurance other than in accordance with the requirements for conversion we describe above. Any change will be made only if we consent, and will be subject to conditions and charges that are then determined.

# DIVIDENDS

We do not expect to credit any dividends to this contract. If we were to pay a dividend, we would decide each year what part, if any, of our surplus to credit to this contract as a dividend.

We will credit any dividend on an anniversary if the contract is then in force.

**Dividend Options**  If the contract is in force on a premium paying basis and if you ask us in a form that meets our needs, you may choose any of these uses for any dividend:

1. Cash.——We will pay it to you in cash.

2. Premium Reduction.——We will use it to reduce any premium then due.

3. Accumulation.——We will hold it at interest. The rate will be at least 3% a year.

If you have not made another choice by 31 days after the anniversary, we will use the dividend as we state under dividend option 3. You may surrender any accumulations, but we must have your request in a form that meets our needs.

**Dividend Credits Described**  The phrase "dividend credits" means the total of any dividends and interest we hold under dividend option 3 and any other dividends we have credited to the contract but have not yet paid.

**Automatic Cash Payment**  We will pay promptly in cash any dividend credits that exist: (1) at the end of the grace period of a past due premium; (2) on the date this contract is exchanged for a new contract of life insurance on the Insured's life; or (3) at the end of the term period.

# PREMIUM PAYMENT

**Payment of Premiums**  The schedule of premiums shows the amounts of the premiums and when they are due. These premiums are due only while the Insured is living and only during the premium period. Each premium is to be paid by its due date. It may be paid at our Home Office or to any of our authorized representatives, upon the delivery of a receipt signed by an officer of the company with the rank of vice president or above.

**Change of Frequency**  If you ask us and we agree, you may change the frequency of premium payments. The more often premiums are due, the larger the total amount that will have to be paid for a contract year.

**Grace Period**  We grant a 31-day grace period for paying each premium except the first one. If a premium has not been paid by its due date, the contract will stay in force during the grace period. If a premium has not been paid when the grace period is over, the contract will end and have no value, except as we state under Dividends.

## REINSTATEMENT

You may reinstate this contract after the grace period of a past due premium if: the term period has not ended; the premium payment is not past due more than five years; and you prove to us that the Insured is insurable for the contract.

You must pay us all premiums in arrears with compound interest; the rate will not exceed 6% per year.

## GENERAL PROVISIONS

**Currency**

Any money we pay, or that is paid to us, must be in United States currency.

**Misstatement of Age or Sex**

If the Insured's stated age or sex or both are not correct, we will change each benefit and any amount to be paid to what the premium would have bought for the correct age and sex.

The Schedule of Premiums may show that premiums change or stop on a certain date. We may have used that date because the Insured would attain a certain age on that date. If we find that the issue age was wrong, we will correct that date.

**Assignment**

We will not be deemed to know of an assignment unless we receive it, or a copy of it. We are not obliged to see that an assignment is valid or sufficient. This contract may not be assigned to any employee benefit plan without our consent. This contract may not be assigned if such assignment would violate any federal, state, or local law or regulation prohibiting sex distinct rates for insurance.

**Voting Rights**

We are a mutual life insurance company. Our principal office is in Newark, New Jersey, and we are incorporated in that State. By law, we have 24 directors. This includes 16 elected by our policyholders (four each year for four year terms), two of our officers, and six public directors named by New Jersey's Chief Justice.

The election is held on the first Tuesday in April from 10:00 A.M. to 2:00 P.M. in our office at Prudential Plaza, Newark, N.J. After this contract has been in force for one year, you may vote either in person or by mail. We will send you a ballot if you ask for one. Just write to the Secretary at Prudential Plaza, Newark, New Jersey 07102, at least 60 days before the election date. By law, your request must show your name, address, policy number and date of birth. Only individuals at least 18 years old may vote.

# SETTLEMENT OPTIONS

**Options Described**

You may choose to have the proceeds (that is, any death benefit or any amount payable upon surrender of the contract) paid in a single sum or under one of the optional modes of settlement described below.

If the person who is to receive the proceeds of this contract wishes to take advantage of one of these optional modes, we will be glad to furnish, on request, details of the options we describe below or any others we may have available at the time the proceeds become payable.

**Option 1 (Instalments for a Fixed Period)**

We will make equal payments for up to 25 years. The Option 1 Table shows the minimum amounts we will pay.

**Option 2 (Life Income)**

We will make equal monthly payments for as long as the person on whose life the settlement is based lives, either with payments certain for 120 months or until the sum of the payments equals the amount put under this option. The Option 2 Table shows the minimum amounts we will pay. But, we must have proof of the date of birth of the person on whose life the settlement is based. The settlement will share in our surplus to the extent and in the way we decide.

**Option 3 (Interest Payment)**

We will hold an amount at interest. We will pay the interest annually, semi-annually, quarterly, or monthly.

**Option 4 (Instalments of a Fixed Amount)**

We will make equal annual, semi-annual, quarterly, or monthly payments for as long as the available proceeds provide.

**Option 5 (Non-Participating Income)**

We will make payments like those of any annuity we then regularly issue that: (1) is based on United States currency; (2) is bought by a single sum; (3) does not provide for dividends; and (4) does not normally provide for deferral of the first payment. Each payment will be at least equal to what we would pay under that kind of annuity with its first payment due on its contract date. If a life income is chosen, we must have proof of the date of birth of any person on whose life the option is based. Option 5 cannot be chosen more than 30 days before the due date of the first payment.

**Interest Rate**

Payments under Options 1 and 4 will be calculated assuming an effective interest rate of at least 3½% a year. Under Option 3 it will be at an effective rate of at least 3% a year. We may include more interest.

# SETTLEMENT OPTIONS TABLES

## OPTION 1 TABLE

**MINIMUM AMOUNT OF MONTHLY PAYMENT FOR EACH $1,000, THE FIRST PAYABLE IMMEDIATELY**

| Number of Years | Monthly Payment |
|---|---|
| 1 | $84.65 |
| 2 | 43.05 |
| 3 | 29.19 |
| 4 | 22.27 |
| 5 | 18.12 |
| 6 | 15.35 |
| 7 | 13.38 |
| 8 | 11.90 |
| 9 | 10.75 |
| 10 | 9.83 |
| 11 | 9.09 |
| 12 | 8.46 |
| 13 | 7.94 |
| 14 | 7.49 |
| 15 | 7.10 |
| 16 | 6.76 |
| 17 | 6.47 |
| 18 | 6.20 |
| 19 | 5.97 |
| 20 | 5.75 |
| 21 | 5.56 |
| 22 | 5.39 |
| 23 | 5.24 |
| 24 | 5.09 |
| 25 | 4.96 |

Multiply the monthly amount by 2.989 for quarterly, 5.952 for semi-annual or 11.804 for annual.

## OPTION 2 TABLE

**MINIMUM AMOUNT OF MONTHLY PAYMENT FOR EACH $1,000, THE FIRST PAYABLE IMMEDIATELY**

| AGE LAST BIRTHDAY | KIND OF LIFE INCOME | | | | AGE LAST BIRTHDAY | KIND OF LIFE INCOME | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 10-Year Certain | | Instalment Refund | | | 10-Year Certain | | Instalment Refund | |
| | Male | Female | Male | Female | | Male | Female | Male | Female |
| 10 and under | $3.18 | $3.11 | $3.17 | $3.10 | 45 | $4.06 | $3.82 | $3.99 | $3.78 |
| 11 | 3.19 | 3.12 | 3.18 | 3.11 | 46 | 4.12 | 3.86 | 4.03 | 3.81 |
| 12 | 3.20 | 3.13 | 3.19 | 3.12 | 47 | 4.17 | 3.90 | 4.08 | 3.85 |
| 13 | 3.21 | 3.14 | 3.20 | 3.13 | 48 | 4.23 | 3.94 | 4.13 | 3.90 |
| 14 | 3.22 | 3.15 | 3.21 | 3.14 | 49 | 4.28 | 3.99 | 4.18 | 3.94 |
| 15 | 3.24 | 3.16 | 3.23 | 3.15 | 50 | 4.35 | 4.04 | 4.24 | 3.98 |
| 16 | 3.25 | 3.17 | 3.24 | 3.16 | 51 | 4.41 | 4.09 | 4.29 | 4.03 |
| 17 | 3.27 | 3.19 | 3.25 | 3.18 | 52 | 4.48 | 4.15 | 4.35 | 4.08 |
| 18 | 3.28 | 3.20 | 3.27 | 3.19 | 53 | 4.55 | 4.21 | 4.41 | 4.13 |
| 19 | 3.30 | 3.21 | 3.28 | 3.20 | 54 | 4.62 | 4.27 | 4.48 | 4.19 |
| 20 | 3.31 | 3.22 | 3.30 | 3.21 | 55 | 4.70 | 4.33 | 4.55 | 4.24 |
| 21 | 3.33 | 3.24 | 3.32 | 3.23 | 56 | 4.78 | 4.40 | 4.62 | 4.30 |
| 22 | 3.35 | 3.25 | 3.33 | 3.24 | 57 | 4.86 | 4.47 | 4.69 | 4.37 |
| 23 | 3.36 | 3.26 | 3.35 | 3.25 | 58 | 4.95 | 4.54 | 4.77 | 4.43 |
| 24 | 3.38 | 3.28 | 3.37 | 3.27 | 59 | 5.05 | 4.62 | 4.86 | 4.50 |
| 25 | 3.40 | 3.30 | 3.39 | 3.29 | 60 | 5.15 | 4.71 | 4.94 | 4.58 |
| 26 | 3.42 | 3.31 | 3.41 | 3.30 | 61 | 5.25 | 4.79 | 5.03 | 4.66 |
| 27 | 3.45 | 3.33 | 3.43 | 3.32 | 62 | 5.36 | 4.89 | 5.13 | 4.74 |
| 28 | 3.47 | 3.35 | 3.45 | 3.34 | 63 | 5.48 | 4.98 | 5.23 | 4.82 |
| 29 | 3.49 | 3.37 | 3.47 | 3.35 | 64 | 5.60 | 5.09 | 5.34 | 4.92 |
| 30 | 3.52 | 3.39 | 3.49 | 3.37 | 65 | 5.73 | 5.20 | 5.45 | 5.01 |
| 31 | 3.54 | 3.41 | 3.52 | 3.39 | 66 | 5.87 | 5.31 | 5.57 | 5.11 |
| 32 | 3.57 | 3.43 | 3.54 | 3.41 | 67 | 6.01 | 5.43 | 5.70 | 5.22 |
| 33 | 3.60 | 3.45 | 3.57 | 3.44 | 68 | 6.15 | 5.56 | 5.83 | 5.34 |
| 34 | 3.63 | 3.47 | 3.60 | 3.46 | 69 | 6.30 | 5.70 | 5.97 | 5.46 |
| 35 | 3.66 | 3.50 | 3.63 | 3.48 | 70 | 6.46 | 5.84 | 6.11 | 5.58 |
| 36 | 3.69 | 3.52 | 3.66 | 3.50 | 71 | 6.62 | 5.99 | 6.27 | 5.72 |
| 37 | 3.72 | 3.55 | 3.69 | 3.53 | 72 | 6.79 | 6.15 | 6.43 | 5.86 |
| 38 | 3.76 | 3.58 | 3.72 | 3.56 | 73 | 6.96 | 6.31 | 6.60 | 6.01 |
| 39 | 3.80 | 3.61 | 3.75 | 3.58 | 74 | 7.13 | 6.49 | 6.78 | 6.18 |
| 40 | 3.84 | 3.64 | 3.79 | 3.61 | 75 | 7.30 | 6.67 | 6.97 | 6.35 |
| 41 | 3.88 | 3.67 | 3.82 | 3.64 | 76 | 7.48 | 6.85 | 7.17 | 6.53 |
| 42 | 3.92 | 3.70 | 3.86 | 3.67 | 77 | 7.66 | 7.04 | 7.38 | 6.72 |
| 43 | 3.97 | 3.74 | 3.90 | 3.71 | 78 | 7.83 | 7.24 | 7.60 | 6.93 |
| 44 | 4.01 | 3.78 | 3.94 | 3.74 | 79 | 8.00 | 7.44 | 7.83 | 7.15 |
| | | | | | 80 and over | 8.17 | 7.64 | 8.07 | 7.38 |


**Prudential**    e Pr    n    l
                  ısurance Company
                  of America

| Insured | Policy No. |
|---|---|
| GARY D SASSER | B4 048 620 |

**Beneficiary Provision**

The proceeds that arise from the Insured's death will be payable in one sum to RICHARD A. JOHNSON, Trustee under an irrevocable Trust Agreement dated October 17, 1996, or the successor(s) in trust, Beneficiary.

In making payment to any Trustee, we have the right to assume that the Trustee is acting in that fiduciary capacity until we receive written notice to the contrary at our Home Office or Service Office, as the case may be. If we made any payment(s) to the Trustee before we received the notice we will not have to make the payment(s) again.

**Endorsed by attachment on Contract Date for the Company**

By

*Susan S. Blunt*

Secretary.

ORD 13669A   92

 **Prudential** The Prudential
Insurance Company
of America

| Insured | Policy No. |
|---------|-----------|
| GARY D SASSER | B4-048-620 |

**Ownership and Control**

Except as we may state below, all rights of ownership and control under this contract
will belong to the owner(s) shown here: RICHARD A. JOHNSON, Trustee under an
irrevocable Trust Agreement dated OCTOBER 17, 1996, or the successor(s) in trust.

While the Insured is living, the owner(s), with no one else's consent, is entitled to
any benefit and value, and to the exercise of any right and privilege granted by the
contract or by us. But if we are settling with an owner or someone else who is not
the Insured, then our consent is needed for a settlement option to be chosen for any
proceeds that may arise other than from the Insured's death.

**Endorsed by attachment on Contract Date for the Company**

By _Susan S. Blunt_

Secretary.

ORD 13669A 92

THE PRUDENTIAL
INSURANCE COMPANY
OF AMERICA

Number

B4 048 620
GARY D SASSER

The Company is authorized to change the application for this contract, so that the contract is issued:

ON THE PRUDENTIAL TERM PLUS PLAN.

The undersigned agree(s) that this form is a part of the application and is to be put in the contract.

| Date | Signature of Proposed Insured or Annuitant |
| 9/21/00 | |
| | Signature of Applicant (If other than proposed Insured or Annuitant) |
| Witness to signature(s) | _Nichd R Johnson Tuiter_ |
| | By _(If applicant is a firm or corporation, show that company's name)_ |
| **This copy is to stay in the Contract.** | (Signature and title of officer signing for that company) |

Printed in U.S.A.

COMB 10164-82
NSOX-4 W NCHO



# Prudential

☐ The Prudential Insurance Company of America
☐ Pruco Life Insurance Company, *a subsidiary of*
 The Prudential Insurance Company of America
Corporate Offices, Newark, New Jersey

**Application for Life Insurance or Policy Change**

COMMON
FRONT DOOR - TELS.

22335

00 JUL 27 AM 6:51

☐ Check here if policy change.

## Part 1  Policy number 64048620

<table>
<tr><td><strong>A</strong> About the Primary Proposed Insured</td><td></td></tr>
</table>

**1.** Name of primary proposed insured *(or current insured person, if policy change)*

Gary D. Sasser
*(First name, middle initial, last name)*

**2.** Social Security number ███████████

**3.** Sex ☐ female ☒ male

**4.** Marital status ☒ single  ☐ married  ☐ widowed  ☐ separated  ☐ divorced

**5.** Date of birth 5 29 51
 month day year

**6.** Age 48

**7.** State of birth *(country if not U.S.)* TN

**8.** Billing address 511 Union Street, Suite ~~2000~~ 2100
 *(street, city, state, ZIP)*
 Nashville TN 37219-8966

**9.** Home address 405 Concord Drive
 *(if different)* *(street, city, state, ZIP)*
 Cookeville, TN 38501

**10.** Home telephone number 931 526 3138

**11.** Business telephone number 931 526 3138

**12.** Current employer Averitt Express

**13.** List all existing life insurance coverage. ☐ Check here if none.

| Company | Amount | Year issued | Type of insurance | To be replaced? |
|---|---|---|---|---|
| Southland | $5,000.00 | | ☐ Individual  ☐ Group | ☐ Yes  ☒ No |
| First Penn | $5,000.00 | | ☐ Individual  ☐ Group | ☐ Yes  ☒ No |
| Federal Home | $8,500.00 | | ☐ Individual  ☐ Group | ☐ Yes  ☒ No |
| Security Connecticut | $35,000.00 | | ☐ Individual  ☐ Group | ☐ Yes  ☒ No |
| United of Omaha | $31,500.00 | | ☐ Individual  ☐ Group | ☐ Yes  ☒ No |
| Lincoln Benefit | $10,000 | | ☐ Individual  ☐ Group | ☐ Yes  ☒ No |

<table>
<tr><td><strong>B</strong> All Other Proposed Insureds <em>(Include applicant if requesting Applicant's Waiver of Premium [AWP] Benefit)</em></td><td></td></tr>
</table>

| Name *(first, initial, last)* | relationship to primary proposed insured | sex *(F/M)* | date of birth *(M/D/Y)* | age | state of birth *(country if not U.S.)* | total life insurance in all companies |
|---|---|---|---|---|---|---|
| | | | | | | |

# Part 1

Ap~~lication for L~~fe or Policy Change

## C Coverage Information

1. Plan of insurance **HKT**

   If applicable to the plan, check one. ☐ Level Death Benefit ☐ Variable Death Benefit

2. Initial amount of insurance $ **30,000.00**

3. Supplementary benefits and riders
   - ☐ Waiver of Premium
   - ☐ Applicant's Waiver of Premium
   - ☐ Automatic Premium Loan
   - ☐ Acceleration of Death Benefits
     (Living Needs Benefit)
   - ☐ Accidental Death Benefit  $ _____
   - ☐ Option to Purchase Additional Insurance (OPAI) $ _____
   - ☐ Option to Purchase Paid-up Life Insurance Additions
     *(include details in section G, Special Requests)*

   Other riders and benefits *(indicate amount where applicable)* _____
   _____
   _____
   _____
   _____

## D Beneficiaries and Ownership
*(If trust, provide name of trust, trustee and date of trust)*

1. Beneficiary information

| | Name | Relationship to primary proposed insured | Age |
|---|---|---|---|
| Primary (Class 1) | Gary D. Sasser Irrev. Trust dated 1/17/96, Richard Johnson, trustee | Trust | |
| Contingent (Class 2) | | | |

2. Is the policyowner someone other than the primary proposed insured? ☑ Yes ☐ No
   *(If Yes, provide information requested below.)*

   Name **Gary D. Sasser Irrev. Trust dated 1/17/96** Date of birth __/__/__
   *(First name, middle initial, last name)*      month day year

   Address **% Richard Johnson, 511 Union Street, St 2100**
   *(street, city, state, ZIP)* **Nashville TN 37219-8966**

## E Payment Information

1a. Within the past 90 days, has any proposed insured been hospitalized or been advised by a member of the medical profession that he or she needs hospitalization for any reason other than for normal pregnancy or well-baby care?  ☐ Yes ☑ No

 b. Within the past 12 months, has any proposed insured received treatment or advice from a member of the medical profession for heart disease, chest pain, stroke or cancer (except skin)?  ☐ Yes ☑ No

2. Is a medical examination required on the primary proposed insured?  ☐ Yes ☑ No
   second proposed insured?  ☐ Yes ☑ No

3. Premium payment mode *(collect full modal premium if prepaid)*
   - ☑ Annual
   - ☐ Semiannual
   - ☐ Quarterly
   - ☐ Monthly
   - ☐ Electronic Funds Transfer (EFT)
   - ☐ Payroll Budget
   - ☐ Government Allotment

4. Amount of prepayment submitted with this application $ **0** _____ *(include any unscheduled premium payments)*
   ☐ None *(must be None if 1a or 1b is Yes, except for Gibraltar [GIB] products)*

5. Date prepayment collected, __/__/__
   month day year

## F Replacement
For any proposed insured, would this insurance replace or cause a change in any existing insurance or annuity in any company?  *(If Yes, enclose all required replacement forms.)*  ☐ Yes ☑ No

## G Special Requests

## Part 1

**N Background on Proposed Insureds**

**1.** Has either the primary proposed insured or second proposed insured (if any) ever used tobacco or other nicotine products such as cigarettes, cigars, pipe, chewing tobacco, snuff, nicotine gum or nicotine patch? *(If Yes, provide date when last used and indicate all types of products.)* ☒ Yes  ☐ No

| | Date (mo., yr.) | Product(s) |
|---|---|---|
| Primary proposed insured | _____ | *occasional cigar use* |
| Second proposed insured | _____ | _____ |

**2.** What are the occupation and duties of the primary proposed insured?
*President / CEO*

**3.** Within the last two years, has any proposed insured done or does he or she plan to do the following:

**a.** operate or have any duties aboard an aircraft, glider, balloon or similar device? *(If Yes, complete Aviation Questionnaire.)*  ☐ Yes  ☒ No

**b.** participate in hazardous sports, such as auto, motorcycle, snowmobile or powerboat competitions/exhibitions, scuba diving, mountain climbing, parachuting, skydiving or any other such sport or hobby? *(If Yes, complete Avocation Questionnaire.)*  ☐ Yes  ☒ No

**4.** Is any proposed insured applying for or requesting reinstatement or policy change(s) of any other life or health insurance policy? *(If Yes, provide insurance company, policy plan and amount.)*  ☐ Yes  ☒ No

_____

**5.** Has any proposed insured been convicted of, or currently charged with, the commission of any criminal offense – other than the violation of a motor vehicle law – within the last 10 years? *(If Yes, provide details.)*  ☐ Yes  ☒ No

_____

**6. a.** Driver's license number and state of issue of primary proposed insured  ▓▓▓▓  ▓▓▓▓  _____

**b.** In the last three years, has any proposed insured

(1) had a driver's license denied, suspended or revoked?  ☐ Yes  ☒ No

(2) been convicted of or cited for

(a) three or more moving violations?  ☐ Yes  ☒ No

(b) driving under the influence of alcohol or drugs?  ☐ Yes  ☒ No

(3) been involved as a driver in two or more auto accidents?  ☐ Yes  ☒ No

*(If Yes to any of the above, provide details, including type of violation, accident, or reason for denial, suspension or revocation.)*

_____

_____

**7.** Does any proposed insured plan to live or travel outside the United States or Canada within the next 12 months? *(If Yes, list countries and purpose and duration of each trip.)*  ☐ Yes  ☒ No

_____

_____

**I Additional Coverage**

*Complete only if this is an application for additional coverage on a person already covered by a Prudential or Pruco policy with an application date within three months of the date of this application.*

To the best of your knowledge, has the health or the mental or physical condition of any person proposed for insurance changed since the answers and statements were given in the application included in policy number _____?  ☐ Yes  ☐ No

*(If Yes, complete the appropriate Part 2 Medical Information section.)*

**J Changes**  Changes made by the Company **(not applicable in New Mexico or West Virginia)**

**K Physician Information**

**Primary proposed insured**

*Physician last consulted*

Name _Dr. Tony Hudson_

Address _Cookeville  TN_

(street, city, state, ZIP)

Telephone number (___)_____ Date last seen _11/99_

Reason last seen _Check-up / labs — normal resuts_

*Primary physician*

Name _Dr. Tony Hudson_

Address _Cookeville  TN_

(street, city, state, ZIP)

Telephone number (___)_____ Date last seen _11/99_

Reason last seen _Checkup / labs — all normal_

**Second proposed insured or applicant for Applicant's Waiver of Premium (AWP)**

*Physician last consulted*

Name _____

Address _____

(street, city, state, ZIP)

Telephone number (___)_____ Date last seen _____

Reason last seen _____

*Primary physician*

Name _____

Address _____

(street, city, state, ZIP)

Telephone number (___)_____ Date last seen _____

Reason last seen _____

**L Physical Measurements**

|  | Height | Weight |
|---|---|---|
| Primary proposed insured | 6'1" | 210 |
| Second proposed insured |  |  |
| AWP applicant |  |  |

**M** **Category II** 1. Family record

**Changes**
**and Plans**
**other than**
**Gibraltar**
**(GIB)**

| | Current age or age at death | Year and cause of death | | Current age or age at death | Year and cause of death |
|---|---|---|---|---|---|
| Father | 77 | unknown | Mother | 70 | |
| Brother | | | Sister | | |
| Brother | | | Sister | | |
| Brother | | | Sister | | |

2. Has anyone proposed for coverage been diagnosed with or treated by a member of the medical profession for

   a. chest pain or any disorder of the heart or blood vessels? ☐ Yes ☑ No

   b. high blood pressure? ☐ Yes ☑ No

   c. cancer, tumor, leukemia, melanoma or lymphoma? ☐ Yes ☑ No

   d. diabetes or high blood sugar? ☐ Yes ☑ No

   e. mental or psychiatric illness? ☐ Yes ☑ No

   f. Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC)? **(Maine:** this question may be answered No if an individual has tested HIV positive and does not have symptoms of the disease AIDS such as dry coughs, skin lesions, weakness, fatigue, weight loss or loss of appetite.) ☐ Yes ☑ No

   g. infection caused by the Human Immunodeficiency Virus (HIV)? **(Not applicable in California, Connecticut and Maine. Wisconsin:** AIDS virus HIV antibody testing is limited to FDA-licensed enzyme immunoassay and confirmatory HIV antibody tests. Any test performed at an anonymous counseling and testing site is confidential and need not be revealed on this application.) ☐ Yes ☑ No

   h. any sexually transmitted diseases? ☐ Yes ☑ No

   i. asthma or any disorder of the lungs? ☐ Yes ☑ No

   j. any disorder of the brain or nervous system? ☐ Yes ☑ No

   k. hepatitis or any disorder of the liver, stomach or intestines? ☐ Yes ☑ No

   l. any disorder of the kidney or urinary tract? ☐ Yes ☑ No

3. Is anyone proposed for coverage currently taking prescription medication? ☐ Yes ☑ No

4. Other than above, has anyone proposed for coverage

   a. been a patient in a hospital or other medical facility? ☐ Yes ☑ No

   b. in the last five years, had or been advised to have surgery, medical tests (other than HIV) or diagnostic procedures such as ECGs, stress tests, X-rays, blood tests, urine tests, etc.? ☑ Yes ☐ No

5. Has anyone proposed for coverage

   a. used, or is he or she now using, cocaine, amphetamines, marijuana, heroin or other drugs, except as prescribed by a member of the medical profession? ☐ Yes ☑ No

   b. had or been advised to have treatment or counseling for alcohol or drug use? ☐ Yes ☑ No

6. Does anyone proposed for coverage have any disease, disorder or condition not previously mentioned? ☐ Yes ☑ No

7. Has anyone proposed for coverage had life or health insurance declined, postponed or issued with an increased premium? **(Missouri:** this question may be answered No if an individual has been declined for coverage.) ☐ Yes ☑ No

8. Is anyone proposed for coverage currently unable to perform his or her normal daily activities or all normal occupational duties on a full-time basis at the customary place of employment? ☐ Yes ☑ No

9. Has anyone proposed for coverage requested or received disability or compensation benefits? ☐ Yes ☑ No

*(continued on next page)*

ORD 96200-98

**M Category II Changes and Plans other than Gibraltar (GIB)** *(continued)*

**10.** Details of "Yes" answers for questions 2-9

| Question number and name of proposed insured | Indicate illness, hospitalization, reason for checkup, medication and any advice or treatment given by a medical professional | Dates and duration of illness | Name, address and telephone number of medical professionals and hospitals |
|---|---|---|---|
| 9b - Gary | 8/99 exam + Insurance exams / EKG | | Dr Hudson |

For additional medical details, use another application.

Term Life Policy. Provides a level benefit. Life insurance payable upon death within stated term period. Premiums payable during Insured's lifetime for stated premium period. After a period of level premiums, the premiums will increase annually as shown under Premium Period on page 3. Convertible, as limited, but not renewable. Eligible for annual dividends as stated under Dividends.

LTI—97

2



**Prudential Financial**

The Prudential Insurance Company of America
213 Washington Street, Newark NJ 07102

FILED
2011 AUG 11 PM 3: 30
CLERK AND MASTER
DAVIDSON CO. CHANCERY CT.
─DC&M

November 22, 2005

Richard Johnson, Trustee
Waller Lansden Dortch & Davis, PLLC
511 Union Street
Suite 2700
Nashville, TN 37219

Re: Insured: Gary Sasser          Policy Number: B4048620

Dear Mr. Johnson,

The purpose of this note is to summarize the process Prudential uses to determine the rating class when a term policy is converted to a new contract under the conversion privilege in the term contract. The rating classification of the new plan will be the same rating classification as the term coverage being converted if the same rating classification is available. If the new policy requested does not offer the same rating classification, the new policy will be in the rating class that is equivalent to that of the existing term policy.

In 2000, when Term Plus Policy B4048620 was issued, the rating classifications available were Select Preferred, Preferred and Standard, where Select Preferred was the best available classification offered. In the case of Mr. Sasser's policy, he received our Preferred classification, which was our rating classification for nonsmokers who did not qualify for the Select Preferred classification. For contractual conversions from a Term Plus contract, the rating classifications today which are equivalent to Select Preferred, Preferred and Standard are Preferred Nonsmoker, Nonsmoker and Smoker, respectively. Our current rating classification for nonsmokers who did not qualify for a Select Preferred rating is Nonsmoker. To be considered for a better rating classification than Nonsmoker (which is the contractually guaranteed rating classification), Mr. Sasser would need to go through appropriate underwriting. I hope this information is helpful in explaining our rating classification determinations on contractual conversions.

Sincerely,

*Eleanor Hartley*

Eleanor S. Hartley, FSA, FLMI, CLU
Vice President and Actuary, Prudential Financial

cc:    Robert R. Williams, Regional Brokerage Director, Prudential Select Brokerage
       Steve Jackson, Principal, American Brokerage Company

**3**



Nashville City Center
511 Union Street, Suite 2700
Nashville, Tennessee 37219-8966
(615) 850-8151
Fax: (615) 244-6804

November 29, 2005

**VIA OVERNIGHT DELIVERY**

Prudential Select Brokerage
Attn: Life New Business
Suite DTY
2101 Welsh Road
Dresher, PA 19025

        Re:    Insured Gary Sasser; Policy Number B4048620 ["Term Policy"]

Dear Sir or Madam:

        As Trustee under an irrevocable Trust Agreement dated October 17, 1996, and owner of the above referenced policy, I hereby elect to convert this policy to a PruLife UL Protector Life Insurance Policy, insured Gary Sasser, insurance amount $30,000,000, Type A (Fixed) Death Benefit. Pursuant to the terms of the Term Policy Prudential Financial is required to convert this policy to a new contract "in the same rating class" as the Term Policy. The Term Policy's rating class is "Preferred." Accordingly, we demand a conversion to the current underwriting classification of "Preferred Non-Smoker." By the express terms of the Term Policy, this is the "same rating class." The Term Policy does not authorize conversion to "an equivalent rating class" as permitted by some of your company's contractual policy language contained in later issued policies.

        As set forth in the PruLife UL Protector Life Insurance Policy Individual Basic Illustration dated November 23, 2005, with ID number 11232005125218, we tender the Preferred Non-Smoker premium of $385,282.00. Enclosed also is the Prudential Financial Request for Change Short Form with the required information from me as Trustee.

1165359.1

November 29, 2005
Page 2

     We await issuance of this new life insurance policy and expressly do not cancel the Term Policy until the PruLife UL Protector Life Insurance Policy is issued in the Preferred Nonsmoker rating class.

Sincerely,

Richard A. Johnson, Trustee

C. Dale Allen, Trustee

LH:RAJ:CDA/dkh

Enclosures

cc:    Roy Depue
       Steve Jackson

1165359.1

**4**



**Prudential** **Financial**

Eleanor S. Ha..ey, FSA, F.....,  CLU
Vice President & Actuary

**The Prudential Insurance Company of America**
213 Washington Street, Newark NJ 07102-3777
Tel 973 802-3681  Fax 973 799-0008
eleanor.hartley@prudential.com

November 6, 2005

RETURN RECEIPT REQUESTED

Richard Johnson, Trustee
Waller Lansden Dortch & Davis, PLLC
511 Union Street
Suite 2700
Nashville, TN  37219

Re:  Insured:  Gary Sasser          Policy Number:  B4048620

Dear Mr. Johnson and Mr. Allen,

We have received your letter dated November 29, 2005, the Change Short Form, and your remittance of $385,282.00.   However, we are unable to honor your request to convert the term policy B4048620 to a PruLife UL Protector Life Insurance Policy with a rating classification of Preferred Nonsmoker.

Your term policy provided a right to convert to a new contract in the same rating class as this contract.  The rating class that is the same rating class that you received at the time the term policy was issued is Nonsmoker.  This is the same rating class that was previously called Preferred.

Since we are unable to issue a PruLife UL Protector policy with rating classification Preferred Nonsmoker without underwriting, we are returning your check and paperwork.  The conversion annual premium for a UL Protector with a rating classification of Nonsmoker that corresponds to the $385,282.00 annual premium for the Preferred Nonsmoker and utilizes your term conversion premium credit of $100,872.00 is $461,020.00.  If we receive the application with the annual premium payment of $461,020.00  or the Minimum Initial Premium of $53,005.28 by December 20, 2005, we will allow the conversion to a PruLIfe UL Protector with rating class Nonsmoker; otherwise you will no longer have the ability to convert your term policy.

We would be happy to consider issuing a new PruLife UL Protector with a Preferred Nonsmoker rating or a rating reduction on the issued conversion policy if Mr. Sasser satisfies the appropriate underwriting requirements.

Sincerely,

*Eleanor Hartley*

Eleanor S. Hartley, FSA, FLMI, CLU
Vice President & Actuary

Attachments:  Check #1038, Policy, Request Change

cc:    Robert R. Williams, Regional Brokerage Director, Prudential Select Brokerage
       Steve Jackson, Principal, American Brokerage Company

**5**

Nashville City Center
511 Union Street, Suite 2700
Post Office Box 198966
Nashville, Tennessee 37219-8966
(615) 850-8151
Fax: (615) 244-6804

February 16, 2006

**VIA HAND DELIVERY**

Prudential Life Insurance Company
c/o Mr. Roy DePue
Mr. Steve Jackson
American Brokerage Company
955 Woodland Street
Nashville, TN 37206

Re:     Insured Gary Sasser; Policy Number B4048620 ["Term Policy"]

Dear Ms. Hartley:

In accordance with your letter dated November 6, 2005, and our letter dated December 19, 2005, the Trust elects to convert the Term Policy and we are enclosing the Application for Life Insurance or Policy Change to convert the Term Policy. By converting this policy under the terms of your letter dated November 6, 2005, and received by us in early December 2005, we, as Trustees of the Gary D. Sasser Irrevocable Trust, expressly reserve all legal rights available to it as set forth in our letter dated November 29, 2005.

Sincerely,

Richard A. Johnson, Trustee

C. Dale Allen, Trustee

RAJ/dkh
Enclosures

1185944.1