# ATTACHMENT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICHARD A. JOHNSON, and <br> C. DALE ALLEN, TRUSTEES, <br><br> Plaintiff, <br><br> v. <br><br> PRUDENTIAL INSURANCE COMPANY <br> OF AMERICA, INC., <br><br> Defendant. | Case No. 3:11-cv-866 <br><br> Judge Haynes |

## SECOND AMENDED COMPLAINT

### The Parties, Venue and Jurisdiction

1. Plaintiff, Richard A. Johnson, Trustee ["Mr. Johnson"] is a citizen and resident of Davidson County, Tennessee.

2. Plaintiff, C. Dale Allen ["Mr. Allen"], is a citizen and resident of Davidson County, Tennessee.

3. Mr. Johnson and Mr. Allen ["the Trustees"] bring this suit in their capacity as co-trustees under an irrevocable Trust Agreement dated October 17, 1996 for the Gary D. Sasser Irrevocable Trust ["The Trust"].

4. The Trustees bring this suit for the benefit of the Trust.

5. Defendant, the Prudential Insurance Company of America, Inc. ["Prudential"], is a corporation organized and existing under the laws of New Jersey.

6. Prudential conducts substantial business on a continuing basis in Davidson County, Tennessee. It also maintains offices in Davidson County, Tennessee.

7. A substantial part of the events giving rise to the claim of The Trustees occurred in this district. Further, the Personal Representative is subject to personal jurisdiction before this Court. Therefore, venue is proper in this Court pursuant to 28 U.S.C. §1391.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds $75,000.

## The Issuance of the Original Policy

9. On September 14, 2000, Prudential issued an insurance policy on the life of Gary D. Sasser [Policy #B4 048 620]["the Policy"].

10. A true and correct copy of the Policy is attached as **Exhibit 1**.

11. The insured under the Policy was Mr. Gary D. Sasser ["Mr. Sasser"]

12. The Policy was a term life insurance policy.

13. The term of the Policy was 20 years.

14. The face amount of the Policy was $30,000,000.

15. Mr. Johnson, as Trustee under the irrevocable Trust Agreement dated October 17, 1996, or the successor in Trust was the owner and beneficiary of the Policy.

16. The Policy constituted a contract between Prudential, on the one hand, and the Trustees and the Trust, on the other hand.

17. In 1999, Mr. Johnson instructed Mr. Steve Jackson ["Jackson"] of American Brokerage to search for a policy which would insure the life of Mr. Sasser with a policy which had the best possible underwriting classification without being "rated."

18. Prudential then informed the Trustees through its agents, Jackson and/or Roy DePue ["Depue"], that Mr. Sasser qualified for "preferred" rates.

19. Prudential informed the Trustees through Mr. Jackson that it would issue a policy which was not rated and which had a "preferred" underwriting classification.

20. Mr. Johnson reasonably believed that "preferred" was better than other underwriting classifications which Prudential offered, and certainly better than a standard rating. So, the Trustees instructed Mr. Jackson to purchase a policy from Prudential with the "preferred" underwriting classification.

21. Prudential's representation that Mr. Sasser qualified for the "preferred" rating and its agreement to issue a policy with that rating were critical factors in the Trustees' decision to purchase a policy from Prudential. The Trustees relied on that representation. Absent that representation, The Trustees would have instructed Messrs. Jackson and Depue to search for policies with more favorable terms, premiums, or both.

22. On September 14, 2000, the Trustees purchased the Policy from Prudential.

23. Consistent with the representation which Prudential had made through Mr. Jackson, the Policy was clearly marked as having a "Preferred" underwriting classification.

24. Unbeknownst to the Trustees, there was no *"preferred"* rating. Rather, the ratings were *"select* preferred," *"non-select* preferred" and "standard."

25. Further, Prudential had actually rated the Policy as *"non-select* preferred" and had concealed this from the Trustees by willfully and intentionally marking the Policy as "Preferred" instead of *"non-select* Preferred."

26. Prudential's representation that the Policy had a "Preferred" underwriting classification was false.

3

Case 3:11-cv-00866   Document 45   Filed 06/15/12   Page 3 of 11 PageID #: 785

27. The Trustees did not discover that this representation of Prudential's was false until their lawyer reviewed e-mails which Prudential has produced in this lawsuit. *See*, e-mails attached as **Exhibit 2.**

28. The Policy was ambiguous. This is because (1) the Policy was marked as having been issued with a "Preferred" underwriting classification and that classification did not exist; and (2) the Policy did not indicate whether the reference to "Preferred" was intended as a reference to the "*Select* Preferred" classification or to the "*Non-Select*" Preferred classification.

29. As a matter of law, this ambiguity in the Policy must be construed against Prudential.

### The Conversion of the Policy

30. At pages 10-11, the Policy provided for conversion to another plan of insurance. In pertinent part, the Policy provided as follows:

> Contract Specifications  The new contract will be *in the same rating class* as this contract. We will set the issue age and the premiums for the new contract in accordance with our regular rules in use on its contract date.

(Underlining and italics supplied).

31. Thus, Prudential was obligated, upon request from the Trustees, to convert the Policy to a policy *in the same rating class.*

32. At the time the Trustees purchased the policy, they were aware of these provisions which allowed the policy to be converted to another policy of the same rating class.

33. At the time the Trustees purchased the policy, there was a substantial likelihood that they would elect to convert the Policy to a Universal Life Policy of the same rating class.

4

34. On November 17, 2005, Prudential agreed in writing to extend through December 2, 2005 the period during which the Trustees could elect to convert the Policy. **[Email, Exhibit 3]**

35. On or about November 11, 2005, Prudential prepared an illustration of premiums and other data for a converted policy. **[Exhibit 4]**. Mr. Johnson received that illustration and then sent it to Mr. Tom Duncan for review.

36. Mr. Tom Duncan is a financial advisor to Mr. Sasser.

37. The illustration was labeled as being for a policy with a "Non-Smoker" underwriting classification.

38. Mr. Sasser was and still is a nonsmoker.

39. Mr. Duncan reviewed the illustration and noticed two matters in particular. First, the annual premiums ($467,339) appeared to be consistent with premiums charged by other companies for similar policies with "standard" classifications. Second, the premiums shown in the illustration were substantially in excess of premiums charged by other companies for similar policies with "preferred" ratings.

40. Mr. Duncan promptly notified Mr. Johnson of these matters.

41. Mr. Johnson then requested that Prudential supply an illustration for a comparable converted policy which had a "preferred" rating.

42. Prudential responded by supplying an illustration for a comparable policy with a "preferred non-smoker" rating. **[Exhibit 5]**.

43. Mr. Johnson compared the two illustrations and observed that the premiums for the policy with the "preferred non-smoker" rating were only $385,282.

44. On November 22, 2005, Prudential sent a letter to Mr. Johnson. **[Exhibit 6]** In pertinent part, the letter stated as follows:

> The purpose of this note is to summarize the process Prudential uses to determine the rating class when a term policy is converted to a new contract under the conversion privilege in the term contract. The rating classification of the new plan will be the same rating classification as the term coverage being converted *if the same rating classification is available*. If the new policy requested does not offer the same rating classification, the new policy will be in the rating class that is *equivalent* to that of the existing term policy.
>
> In 2000, when Term Plus Policy B4048620 was issued, the rating classifications available were Select Preferred, Preferred and Standard, where Select Preferred as the best available classification offered. In the case of Mr. Sasser's policy, he received our Preferred Classification, which was our rating classification for nonsmokers who did not qualify for the Select Preferred Classification. <u>For contractual conversions from a Term Plus contract, the rating classifications today which are equivalent to Select Preferred, Preferred and Standard are Preferred Nonsmoker, Nonsmoker and Smoker, respectively</u>. Our current rating classification for nonsmokers who did not qualify for a Select Preferred rating is Nonsmoker. To be considered for the better rating classification than Nonsmoker (which is the contractually guaranteed rating classification), Mr. Sasser would need to go through appropriate underwriting. . . .

[Complaint, ¶ 30] (Underlining and italics supplied).

45. This letter was incorrect, false or both in at least two respects. First, the letter falsely represented that the underwriting classifications which had existed when Prudential issued the Policy were Select Preferred, *Preferred* and Standard. In truth and in fact, there had never been a "*Preferred*" classification. There had only been "*Select* Preferred" and "*Non-Select* Preferred."

Second, the plain language of the Policy which Prudential drafted did not permit Prudential to issue a converted policy based on an *equivalent* rating class. Rather, that plain language required Prudential to issue a converted policy having the *same* rating class. The *same* rating class was not the purportedly equivalent rating class of "nonsmoker."

6

46. Upon information and belief, the Trustees allege that Prudential has since modified its policies to state expressly that Prudential may convert to an "equivalent" classification. The very fact that Prudential found it necessary so to modify its policies is an implicit admission that the earlier versions of the policy, such as was sold to the Trustees, did *not* allow conversion to an "equivalent" class.

47. Unaware of the ruse which Prudential was perpetrating on them, the Trustees sent a letter to Prudential on November 29, 2005. **[Exhibit 7]** In that letter, they attempted to convert the Policy to a UL Protector Policy. Because the Policy allowed conversion to a new policy of the *same* underwriting classification, not an *equivalent* classification, the demanded they demanded that Prudential convert the Policy to a UL Protector Policy with the "Preferred Non-Smoker" rating. In pertinent part, the letter stated as follows:

> . . . I hereby elect to convert this policy to a PruLife UL Protector Life Insurance Policy, insured by Gary Sasser, insurance amount $30,000,000, Type A (Fixed) Death Benefit. Pursuant to the terms of the Term Policy Prudential Financial is required to convert this policy to a new contract "in the same rating class" as the Term Policy. The Term Policy's rating class is "Preferred." Accordingly, we demand a conversion to the current underwriting classification of "Preferred Non-Smoker." By the express terms of the Term Policy, this is the "same rating class." The Term Policy does not authorize conversion to "an equivalent rating class" as permitted by some of your company's contractual policy language contained in later issued policies.

48. At the conclusion of the letter, Trustees tendered a check in the amount of $385,282.00 for the first annual premium on the converted policy.

49. On December 6, 2005, Prudential sent a letter to Trustees. **[Exhibit 8]** In that letter, Prudential refused to convert the Policy to a new policy with a "Preferred Non-Smoker" rating.

50. On February 16, 2006, Trustees sent another letter to Prudential. **[Exhibit 9]** In pertinent part, the letter stated as follows:

Case 3:11-cv-00866   Document 45   Filed 06/15/12   Page 7 of 11 PageID #: 789

> In accordance with your letter dated November 6, 2005, and our letter dated December 19, 2005, the Trust elects to convert the Term Policy and we are enclosing the Application for Life Insurance or Policy Change to convert the Term Policy. By converting this policy under the terms of your letter dated November 6, 2005, and received by us in early December 2005, we, as Trustees of the Gary D. Sasser Irrevocable Trust, <u>expressly reserve all legal rights available to it as set forth in our letter dated November 29, 2005.</u>

(emphasis supplied).

51. Thus, the Trustees converted the Policy to a PruLife UL Protector Policy with rating classification of nonsmoker and level premium to the age of 82 ["the Converted Policy"]. They <u>expressly reserved their right to have the Policy converted to a PruLife UL Protector with the same rating class as the Policy</u>.

52. Prudential then converted the Policy by issuing a PruLife UL Protector Policy with rating classification of nonsmoker and level premium to the age of 82, but with a "Nonsmoker" rating class.

53. Thus, Prudential has failed and refused to honor its contractual obligation to convert the Policy to a new policy having the *same* rating class.

54. The Policy was ambiguous. This is because (1) the Policy was marked as having been issued with a "Preferred" underwriting classification and that classification did not exist; and (2) the Policy did not indicate whether the reference to "Preferred" was intended as a reference to the "*Select* Preferred" classification or to the "*Non-Select*" Preferred classification.

55. Because that ambiguity must be construed against Prudential, it was required to convert the Policy to a new policy with a *"Select* Preferred" underwriting classification.

56. Alternatively, Prudential was required to convert the Policy to a new policy which had an underwriting classification that was equivalent to "*Select Preferred.*" Because Prudential alleges

8

Case 3:11-cv-00866   Document 45   Filed 06/15/12   Page 8 of 11 PageID #: 790

that the "Preferred Non Smoker" classification is equivalent to *Select Preferred*," it was, at the very least, obligated to convert the Policy to a new policy with a "Preferred Non Smoker" underwriting classification."

57. The premiums which the Trustees must pay for the Converted Policy ( PruLife UL Protector policy with rating classification of Nonsmoker ) are much greater than the premiums which they would be required to pay for such a policy with the Preferred Nonsmoker rating classification.

58. As stated in this complaint, Prudential has breached the contract which it had with the Trustees and the Trust.

59. Prudential's breach of contract has proximately caused great damage to the Trustees and the Trust.

60. Prudential owed to the Trustees and to the Trust a duty of good faith and fair dealing.

61. As stated in this Complaint, Prudential has breached the obligation of good faith and fair dealing which it owed to the Trustees and to the Trust.

62. Prudential's breach of its obligation of good faith and fair dealing has proximately caused great damage to the Trustees and to the Trust.

63. The Trustees have paid all premiums for the Converted Policy as those premiums have become due. They will continue to do so.

PREMISES CONSIDERED, the Trustees Demand:

1. That they have judgment for the benefit of the Trust against Prudential for compensatory damages and prejudgment interest pursuant to T.C.A. §47-14-123.

2. That the Court reform the Contract between the parties so that the premiums which must be paid for the Converted Policy are reduced to the amount which the Trustees

9

would be required to pay if the rating classification for the Converted Policy had been Select Preferred.

3. In the alternative, that the Court reform the Contract between the parties so that the premiums which must be paid for the Converted Policy are reduced to the amount which the Trustees would be required to pay if the rating classification for the Converted Policy had been Preferred Non-Smoker, rather than Nonsmoker.

4. That all costs, including discretionary costs, be taxed to Prudential.

5. That they have such other and further relief as this Court deems just and proper.

Respectfully submitted,

s/ Winston S. Evans
Winston S. Evans (#6281)
Evans, Jones & Reynolds, P.C.
710 Suntrust Plaza
401 Commerce St.
Nashville, TN 37219-2405
(615) 259-4685
*Attorney for Plaintiffs, Richard A. Johnson and C. Dale Allen, Trustees*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **SECOND AMENDED COMPLAINT** has been served via **the Court's Electronic Filing System** upon:

Thomas K. Potter, III
James A. Haltom
BURR & FORMAN LLP
700 Two American Center
3102 West End Ave.
Nashville, TN 37203

this ___ day of _____, 2012.

                                                                         s/ Winston S. Evans

366800.019

11

Case 3:11-cv-00866   Document 45   Filed 06/15/12   Page 11 of 11 PageID #: 793