IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICHARD A. JOHNSON and C. DALE ALLEN, in their official capacity as TRUSTEES | )<br>)<br>) |
| Plaintiffs, | ) No. 3:11-0866<br>) Magistrate Judge Bryant |
| v. | ) |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA, INC. | )<br>) |
| Defendant. | ) |

M E M O R A N D U M

I.  INTRODUCTION

This civil action is before the undersigned for all further district court proceedings, pursuant to the consent of all parties. (Docket Entry No. 54)

Plaintiffs, Richard A. Johnson and C. Dale Allen, Tennessee citizens and co-Trustees under an irrevocable trust agreement dated October 17, 1996 for the Gary D. Sasser Irrevocable Trust,[1] originally filed this breach of contract action for the benefit of the Trust in Davidson County, Tennessee Chancery Court against Defendant, The Prudential Insurance Company of America ("Prudential"),[2] a New Jersey corporation with its principal

---

[1] See Plaintiffs' Second Amended Complaint, Docket Entry No. 45 at ¶¶ 1-3.

[2] Defendant is named in this lawsuit as "Prudential Insurance Company of America, Inc." However, Defendant maintains that its proper name is "The Prudential Insurance Company of America." (See, e.g., Docket Entry No. 1, Notice of Removal, at 1).

place of business in New Jersey. Prudential removed the action to this Court under 28 U.S.C. § 1332, the federal diversity statute, without objection. Plaintiffs thereafter twice amended their complaint. Their Second Amended Complaint was filed on June 15, 2012. (Docket Entry No. 45)

Before the Court is Prudential's motion to dismiss plaintiffs' Second Amended Complaint (Docket Entry No. 49), filed on July 13, 2012. Plaintiffs have filed their response (Docket Entry No. 56), to which Prudential replied with leave of Court (Docket Entry No. 60). On September 26, 2012, the Court heard oral argument on Prudential's motion, pursuant to plaintiffs' request for same. For the reasons stated in this Memorandum, and by Order entered contemporaneously herewith, Prudential's motion will be GRANTED and plaintiffs' case DISMISSED.

## II. ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

On September 14, 2000, Prudential issued an insurance policy on the life of Mr. Gary D. Sasser, in the amount of thirty million dollars. The term of this policy was twenty years. Plaintiff Johnson, as Trustee of the Gary D. Sasser Irrevocable Trust, was the owner and beneficiary of the policy. This policy was purchased after plaintiff Johnson, in 1999, had instructed Mr. Steve Jackson of American Brokerage to search for a policy of insurance on Mr. Sasser's life which had the best possible underwriting classification without being "rated." Mr. Jackson, as agent for the Trustees, was informed by Prudential that Mr. Sasser qualified for "preferred" rates, and that Prudential would issue a policy on Mr. Sasser's life which was not rated and which had a "preferred" underwriting classification. In reliance

upon these representations, plaintiff Trustees purchased the policy from Prudential. (Docket Entry No. 45 at ¶¶ 9-21)

The policy issued on September 14, 2000, was marked as being in the "Preferred" rating class, consistent with the representations made by Prudential to the Trustees through Mr. Jackson. Id. at ¶ 23 and Exh. 1, p. 3. However, unbeknownst to the plaintiff Trustees, there was no rating class known simply as "Preferred"; rather, the rating classes were denominated "Select Preferred," "Non-Select Preferred," and "Standard." Id. at ¶ 24. In fact, the policy issued to plaintiff Johnson was in the "Non-Select Preferred" rating class. Id. at ¶ 25. The Trustees did not discover this discrepancy until reviewing emails produced by Prudential in this lawsuit. Id. at ¶ 27.

The policy contains a provision for conversion to another plan of insurance, and Plaintiffs had contemplated their eventual conversion of the policy at the time they purchased the policy. Id. at ¶¶ 32-33.

The conversion clause of the policy provides, in pertinent part, the following:

| | |
|---|---|
| Right to Convert | You may convert this contract to a new contract of life insurance on the Insured's life. You will not have to prove that the Insured is insurable. |
| Conditions | You must ask for the conversion in a form that meets our needs, while this contract is in force, and on or before the fifth contract anniversary. We may require you to send us the contract. |

\* \* \*

| | |
|---|---|
| Contract Specifications | The new contract will be in the same rating class as this contract. We will set the issue age and the premiums for the new contract in accordance with our regular rules in use on its contract date. |

3

> Except as we state in the state in the next sentence, the new contract may be on any life or endowment plan we regularly issue on its contract date for the same rating class, amount, issue age, and sex...

(Docket Entry No. 45-1 at 8).

Plaintiffs allege that Defendant "was obligated, upon request from [Plaintiffs] to convert the Policy to a policy in the *same* rating class." (Docket Entry No. 45 at ¶ 31) (emphasis in original). On November 17, 2005, Defendant agreed by letter to extend the conversion period through December 2, 2005. Id. at ¶ 34. An illustration for a converted policy was prepared by Defendant and received by Plaintiff Johnson, with the insured's underwriting classification noted as "Non-Smoker." Id. at ¶¶ 35, 37. Plaintiff Johnson then requested that Defendant supply an illustration for a converted policy with a "Preferred" rating. Id. at ¶ 41. Defendant responded by supplying an illustration of a converted policy with a "Preferred Non-Smoker" rating, the premiums for which were substantially lower than those associated with the "Non-Smoker" rating. Id. at ¶¶ 42, 43.

On November 22, 2005, Defendant sent a letter to Plaintiff Johnson, stating in pertinent part, the following:

> The purpose of this note is to summarize the process Prudential uses to determine the rating class when a term policy is converted to a new contract under the conversion privilege in the term contract. The rating classification of the new plan will be the same rating classification as the term coverage being converted if the same rating classification is available. If the new policy requested does not offer the same rating classification, the new policy will be in the rating class that is equivalent to that of the existing term policy.

> In 2000, when [the original policy] was issued, the rating classifications available were Select Preferred, Preferred and Standard, where Select Preferred was the best available classification offered. In the case of Mr. Sasser's policy, he received our Preferred Classification, which was our rating classification for nonsmokers who did not qualify for the Select Preferred Classification. For contractual conversions from a Term Plus contract, the rating classifications today which are equivalent to Select Preferred, Preferred and Standard are Preferred Nonsmoker, Nonsmoker and Smoker, respectively. Our current rating classification for nonsmokers who did not qualify for a Select Preferred rating is Nonsmoker. To be considered for the better rating classification than Nonsmoker (which is the contractually guaranteed rating classification), Mr. Sasser would need to go through appropriate underwriting. . . .

(Docket Entry No. 45 at ¶ 44)

On November 29, 2005, Plaintiffs sent a letter to Defendant demanding Defendant convert the original policy to a new policy with a "Preferred Non-Smoker" rating, and stating the following in pertinent part:

> . . . I hereby elect to convert this policy to a PruLife UL Protector Life Insurance Policy, insured Gary Sasser, insurance amount $30,000,000, Type A (Fixed) Death Benefit. Pursuant to the terms of the Term Policy Prudential Financial is required to convert this policy to a new contract "in the same rating class" as the Term Policy. The Term Policy's rating class is "Preferred." Accordingly, we demand a conversion to the current underwriting classification of "Preferred Non-Smoker." By the express terms of the Term Policy, this is the "same rating class." The Term Policy does not authorize conversion to "an equivalent rating class" as permitted by some of your company's contractual policy language contained in later issued policies.

(Docket Entry No. 45 at ¶ 47). Plaintiff tendered $385,282.00 for the first annual premium on the new policy. Id. at ¶ 48.

5

On December 6, 2005,[3] Defendant sent a letter to Plaintiffs refusing to convert the policy under a "Preferred Non-Smoker" rating and returning their initial premium payment. Id. at ¶ 49.

In response, on February 16, 2006, Plaintiff sent a letter to Defendant stating the following, in pertinent part:

> In accordance with your letter dated November 6, 2005, and our letter dated December 19, 2005, the Trust elects to convert the Term Policy and we are enclosing the Application for Life Insurance or Policy Change to convert the Term Policy. By converting this policy under the terms of your letter dated November 6, 2005, and received by us in early December 2005, we, as Trustees of the Gary D. Sasser Irrevocable Trust, expressly reserve all legal rights available to it as set forth in our letter dated November 29, 2005.

Id. at ¶ 50. Thus, Plaintiffs allege that they converted the policy under the rating classification of Nonsmoker in accordance with Defendant's requirements, but under the express reservation of "the right to have the [p]olicy converted to a [new policy] with the same rating class as the [original] [p]olicy." Id. at ¶ 51. The converted policy was thereafter issued by Defendant.

According to Plaintiffs, Defendant failed and refused to honor its contractual obligation to convert the policy to a new policy of the same rating class. Id. at ¶ 53. Plaintiffs conclude that, given the ambiguity resulting from the original policy's issuance on the "Preferred" class of risk when the risk class at the time were denominated "Select

---

[3] Defendant mistakenly dated this letter November 6, 2005, and Plaintiffs referred to this November date in future correspondence; the correct date of Defendant's letter was December 6, 2005.

Preferred," "Non-Select Preferred," and "Standard," the conversion option in the policy must be construed against Defendant, as requiring conversion to a new "Select Preferred" policy. Id. at ¶¶ 54-55. Plaintiffs alternatively allege that, at the very least, Defendant was obligated to convert the policy to a policy with the equivalent of the "Select Preferred" classification, which is their "Preferred Nonsmoker" classification. Id. at ¶ 56. Plaintiffs allege that Defendant's breach of contract has caused them and the trust great damage due to the difference in premiums between policies written on the "Nonsmoker" and "Preferred Nonsmoker" risk classes. Id. at ¶¶ 57-59. Plaintiffs finally allege that Defendant breached their obligation of good faith and fair dealing with Plaintiffs, also causing damages to Plaintiffs and the trust. Id. at ¶¶ 45-47. Plaintiffs have paid all premiums for the converted policy as they have become due. Id. at ¶ 48.

## III.  DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, Plaintiffs' complaint must include sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To be sure, the complaint must be construed in the light most favorable to Plaintiffs, with well pled facts deemed true and with all reasonable factual inferences drawn in their favor. Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008); however, Plaintiffs are not entitled to any

7

unwarranted factual inferences. In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (citing Jones, supra). Plaintiffs' complaint must set forth, directly or inferentially, sufficient factual allegations to support each element of their claims. Id. Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to state a viable claim, nor are they deserving of the presumption of truth. Id.

Under Tennessee law, "'[t]he essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract.'" ARC LifeMed, Inc. v. AMC-Tennessee, Inc., 183 S.W.3d 1, 26 (Tenn.Ct.App. 2005) (citation omitted). Plaintiffs allege, and Defendant does not dispute, the existence of a valid, enforceable contract of insurance. Plaintiffs further allege that the Defendant breached that contract when it failed to perform its contractual obligation to convert the original policy to a new policy "in the same rating class."

"The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." Planters Gin Co. v. Federal Compress & Warehouse Co., Inc., 78 S.W.3d 885, 890 (Tenn. 2002). Furthermore,

> An insurance policy must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning. Parker v. Provident Life & Acc. Ins. Co., 582 S.W.2d 380, 383 (Tenn. 1979). When there is doubt or ambiguity as to its meaning, an insurance contract must be construed favorably to provide coverage to the insured. Christenberry [v. Tipton, 160 S.W.3d 487, 494 (Tenn. 2005)]. However, the contract may not be rewritten by the Court. Id.; see also Tenn. Farmers Mut. Ins. Co. v. Witt, 857 S.W.2d 26, 32 (Tenn. 1993).

Gillard v. Taylor, 342 S.W.3d 492, 494 (Tenn.Ct.App. 2009) (quoting Naifeh v. Valley Forge Life Ins. Co., 204 S.W.3d 758 (Tenn. 2006)).

"'Ordinary meaning' of the terms of a policy is the meaning which the average policyholder and insurer would attach to the term, and a settled and widely accepted meaning accorded to a particular phrase is persuasive in the interpretation of an insurance policy thereafter using such phrase." Rain and Hail Ins. Servs., Inc. v. Peeler, 2001 WL 25706, at *3 (Tenn.Ct.App. Jan. 9, 2001). Further, "[w]hen called upon to interpret a term used in an insurance policy that is not defined therein, courts in Tennessee sometimes refer to dictionary definitions." American Justice Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 815 (Tenn. 2000).

The phrase "same rating class" is not a defined term under the policy. Since the filing of their original state court complaint, Plaintiffs have contended that a converted policy of the "same rating class" refers to a policy with a rating classification labeled "Preferred," just as the original policy. According to Plaintiffs, the Oxford Dictionary defines the term "same" as, "*exactly* alike; not different or changed." (Docket Entry No. 56 at 11) Prior to filing their Second Amended Complaint, Plaintiffs further contended in the alternative that, inasmuch as the "Preferred" rating class no longer existed when their policy conversion was effected, they were entitled to have their new policy issued under the rating class which, though not exactly like the original rating class, is the closest thing to it, in that it possessed

9

in its title the word "preferred," i.e., the rating class "Preferred Nonsmoker." With the filing of their Second Amended Complaint, Plaintiffs continue to claim that the phrase "same rating class" must be interpreted as requiring an identically named rating class upon conversion (rather than its renamed equivalent), but now appear to have abandoned the paradoxical argument that "same rating class" somehow equals "similarly-named rating class,"[4] claiming instead that a latent ambiguity arising from the alleged prior denomination of Prudential's relevant rating classes (i.e., "Select Preferred," "Non-Select Preferred," and "Standard") and the "Preferred" designation on the face of the policy compels the construction of the contract against Prudential, with the effect that Plaintiffs' original policy be recognized as issued upon the "Select Preferred" class of risk. Alternatively, Plaintiffs would accept the premium schedule that would accompany the equivalent of the prior "Select Preferred" rating, which is "Preferred Nonsmoker." (Docket Entry No. 45 at 8-10)

Meanwhile, Defendant does not argue any opposing dictionary definition of "same." Rather, Defendant asserts that Plaintiffs in fact received a new policy in the same rating class as the original, since "Preferred" was the middle tier of a three-tiered rating class regime

---

[4]In their November 29, 2005 demand letter to Prudential, Plaintiffs stated:

> Pursuant to the terms of the Term Policy Prudential Financial is required to convert this policy to a new contract "in the same rating class" as the Term Policy. The Term Policy's rating class is "Preferred." Accordingly, we demand a conversion to the current underwriting classification of "Preferred Non-Smoker." By the express terms of the Term Policy, this is the "same rating class."

(Docket Entry No. 45-7)

10

when the original policy was issued, and the "Nonsmoker" rating class under which the new policy was issued is the corresponding middle tier under the renamed three-tier regime. Defendant points out that the original policy issued to Plaintiffs did not promise to preserve the nomenclature of its underwriting classifications for the duration of that term policy, nor does the conversion option contemplate that its exercise will result in issuance of an otherwise identical policy, as both the issue age and the premium schedule for the converted policy are expressly determinable according to Defendant's rules in use on the date of the new policy's issuance. (Docket Entry No. 45-1 at 8) In short, Defendant's argument is that Plaintiffs got exactly what they bargained for in their converted policy: a new policy in the same, middle-tier rating class, which class just happened to be called something different in 2006 than it was in 2000.

The Court finds that the policy language in this case may be fairly and reasonably interpreted according to its plain and ordinary meaning, which does not allow for the doubt and ambiguity that Plaintiffs attempt to inject. Plaintiffs' reading of the phrase "same rating class," isolating the word "same" and applying their asserted definition of that modifier to insist that, since Prudential's terminology had changed and "Preferred" no longer existed as a rating class, they were entitled to an upgrade lowering their premiums for the same coverage, would result in a strained interpretation awarding Plaintiffs a windfall for name's sake.

The Court declines to so interpret this provision. Compare Preis v. New England Life Ins. Co., 2009 WL 1530994 (W.D. La. May 28, 2009). In Preis, the plaintiff was issued an insurance policy by New England Life Insurance Company ("New England") upon the underwriting classification designated as "Preferred Standard." Id. at *1. The plaintiff was entitled to exercise an "exchange option" whereby he could exchange his original policy for a new plan of insurance in "the same . . . underwriting class[.]" Id. Following a merger of New England into Metropolitan Life Insurance Company ("MetLife"), the plaintiff exercised his exchange option, receiving a policy illustration from MetLife which put him in MetLife's risk class of "Male Preferred Nonsmoker." Id. However, MetLife subsequently reissued plaintiff's policy illustration, changing the plaintiff's risk class from "Male Preferred Nonsmoker" to "Male Standard Nonsmoker." Id. at *2. MetLife reasoned that it had mistakenly illustrated the policy under the "Male Preferred Nonsmoker" class, when "Male Standard Nonsmoker" was actually the equivalent of New England's "Preferred Standard" rating, their standard or lower-tiered rating. Id. However, the plaintiff alleged that "Preferred Standard" was actually New England's lowest risk, higher tiered rating, equivalent to the "Male Preferred Nonsmoker" class that MetLife had first illustrated, and claimed breach of contract when MetLife declined to honor that illustration. Id. In denying MetLife's motion for summary judgment on the breach of contract claim, the court found a material factual issue as to whether MetLife complied with its obligation to exchange the plaintiff's original policy for a new policy on the same underwriting class, based on the

plaintiff's proof in support of his position as to where in the New England hierarchy his original underwriting classification fell. Id. at *3. Notably, the difference in nomenclature between the two policies did not lead the court to find any impossibility of performance resulting in MetLife's breach of contract. Rather, the court noted that, because the plaintiff's policy could not have been converted pursuant to "truly identical classifications" given the difference in terminology employed by MetLife versus New England, "the fact finder will have to determine which of MetLife's risk categories is 'the same' as New England's classification of 'Preferred Standard.'" Id. at *3 n.7.

Here, unlike in Preis, there does not appear to be any legitimate dispute that, at the time Plaintiffs purchased the original policy, Mr. Sasser had been rated in the middle tier of Prudential's risk classification structure, pursuant to Plaintiffs' stated desire to purchase a policy with the best possible underwriting classification, with the qualification that it not be a "rated" policy. Plaintiffs even concede that, "[h]ad Prudential drafted its Policy so to limit the conversion option [to a policy of an equivalent rating class rather than 'the same' rating class] in the first place, this litigation would have been entirely unnecessary." (Docket Entry No. 56 at 29) Ergo, Plaintiffs' position here is purely a matter of semantics. From September 2000 until February 2006, Plaintiffs and Prudential performed under their policy contract with the evident and mutual understanding that coverage was provided upon the life of the insured at the middle (i.e., higher than Standard but lower than Select Preferred) rating class with the corresponding schedule of premium payments. It was plainly not the intent of the

13

parties when they entered into this contract that, upon its conversion at some indeterminate point in the future, the name of Mr. Sasser's original rating class would define Plaintiffs' entitlement vis-à-vis Prudential's risk classification structure at the time of conversion. Obviously, if Prudential had changed the names of their three tiers of risk to "Preferred" (lower tier), "Preferred Plus" (middle tier), and "Preferred Platinum" (upper tier), Plaintiffs would not have insisted that their converted policy be downgraded to the lower tier (and thus more expensive) rating class of the same name, but would likely have filed suit to prevent such harm.

Furthermore, Plaintiffs' allegation and argument that an email chain from July 2000 referencing Prudential's offer of a "Non Select Preferred" rating (Docket Entry No. 45-2) reveals that the "Preferred" rating class never even existed, creating a latent ambiguity in the policy which requires the Court to construe the policy in their favor, is a red herring. In none of the three iterations of Plaintiffs' complaint have they ever alleged their belief that they were purchasing coverage at the best rating available, or that Mr. Sasser's rating was held out by Prudential as its top-tier rating.[5] Indeed, Plaintiffs have always insisted that Mr.

---

[5]In their original state court complaint, Plaintiffs simply alleged that "[w]hen the Policy was issued, the following rate classifications were available from Prudential: Select Preferred[,] Preferred[, and] Standard. ... Mr. Sasser received the Preferred rating classification from Prudential." (Docket Entry No. 1-1 at 4, ¶¶ 17, 20) Following removal to this Court, Plaintiffs repeated these allegations in their First Amended Complaint, while adding the allegation that "[t]he Trustees believed, as the term 'preferred' implies, that this was better than other rating classifications which Prudential might have had." (Docket Entry No. 25 at 2, ¶ 17) Finally, in their Second Amended Complaint, Plaintiffs allege that they "reasonably believed that 'preferred' was better than other underwriting classifications which Prudential offered, and certainly better than a standard rating." (Docket Entry No. 45 at 3,

14

Sasser avoid the underwriting process necessary to procure a top-tier rating, despite Prudential's offer of such process. Rather, from an email which mentions (but appears to equate) the rating class "Preferred" and the designation "Non-Select Preferred,"[6] Plaintiffs extrapolate that the clear "Preferred" designation on their policy is incomplete, allowing for the inference that Mr. Sasser's true rating class was the top-tiered "Select Preferred" and that Prudential misrepresented this class on the policy, in the perpetration of a "ruse" which was utilized to subsequently demand conversion to the equivalent of the middle-tiered, more expensive "Non-Select Preferred" policy. However, only reasonable factual inferences need be drawn in Plaintiffs' favor, Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008), while "this Court need not accept as true legal conclusions or unwarranted factual inferences." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). Plaintiffs' argument here depends on unreasonable and unwarranted factual inferences, which this Court does not accept. Unlike the case in Preis, Plaintiffs here have not alleged that the underwriting standards for Prudential's new middle-tier rating "Nonsmoker" are materially different from the underwriting standards for their prior middle-tier rating, whether denominated "Preferred" or "Non-Select Preferred."

---

¶20)

[6]Docket Entry No. 45-2 ("I've been lead to believe that when the policy prints any reference to the underwriting class will read only 'Preferred' and that the words 'Non Select' do not appear on the actual policy.")

In sum, the Court finds that Plaintiffs' Second Amended Complaint does not plausibly allege Prudential's "nonperformance amounting to a breach of the contract[.]" ARC LifeMed, 183 S.W.3d at 26. Correspondingly, Plaintiffs' claim of a breach of the obligation of good faith and fair dealing is without merit. Envoy Corp. v. Quintiles Transnat'l Corp., 2007 WL 2173365, at *8 (M.D. Tenn. July 26, 2007) ("[A]bsent a valid claim for breach of contract, there is no cause of action for breach of an implied covenant of good faith and fair dealing.").

## IV. CONCLUSION

In light of the foregoing, Plaintiffs' Second Amended Complaint will be dismissed, and judgment will enter for Prudential. An appropriate Order will enter.

ENTERED this 29th day of March, 2013.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE